No. 12716

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

———————————

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

STEVEN THORSNESS,

Defendant and Appellant.

———————————

Appeal from: District Court of the Sixth Judicial District,
Honorable C. B. Sande, Judge presiding.

Counsel of Record:

For Appellant:

Towe, Neely and Ball, Billings, Montana
Berger, Anderson, Sinclair and Murphy, Billings,
Montana
Arnold A. Berger argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General, argued,
Helena, Montana
Jack Yardley, County Attorney, appeared, Livingston,
Montana
Edward P. McLean, Deputy County Attorney, argued,
Livingston, Montana

———————————

Submitted: September 23, 1974

Decided: NOV 1 4 1974

Filed: NOV 1 1 1974

_Thomas J. Kearney_
Clerk

No. 12793

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

--------------

STATE OF MONTANA ex rel.
STEVEN SCOTT THORSNESS,

Relator,

-vs-

THE DISTRICT COURT OF THE FOURTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, and the Honorable Jack L.
Green, as Presiding Jude thereof,

Respondents.

--------------

Original Proceeding:

Counsel of Record:

For Relator:

Berger, Anderson, Sinclair and Murphy, Billings, Montana
Arnold A. Berger argued, Billings, Montana
Robert Campbell, Missoula, Montana

For Respondents:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General, argued,
Helena, Montana
Jack Yardley appeared, County Attorney, Livingston,
Montana
Edward P. McLean, argued, Deputy County Attorney,
Livingston, Montana

--------------

Submitted: September 23, 1974

Decided:

Filed:

_Thomas J. Kearney_
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This opinion combines this Court's decisions in Steven S. Thorsness' petition for writ of supervisory control and his appeal from the revocation of deferred imposition of sentence. Although the petition and the appeal were filed separately, they were combined for argument and will be handled together here, since they arise from the same or related facts.

In 1972, Steven S. Thorsness plead guilty to a charge of possession of dangerous drugs. Imposition of sentence was deferred for two years "under the usual conditions, and in addition, the condition that the defendant serve four months in the State Prison * * *". Thorsness served that time, was released, and placed on probation. The rules governing his probation included the usual requirements that he respect and obey the law; secure permission before traveling from his assigned district; and, "not buy, sell, use, or be in the possession of dangerous drugs".

On August 1, 1973, Thorsness traveled from Billings, Montana, to Missoula, Montana, where he was arrested the next day. The ground for the arrest was violation of the travel restrictions contained in the probation rules. A short time after the arrest, a search warrant was procured and Thorsness' automobile and personal effects were searched.

Quantities of dangerous drugs were found and Thorsness was then charged with possession of those drugs. A motion to suppress was filed, heard and denied. Thorsness now petitions this Court for a writ of supervisory control, directing the district court to suppress the evidence seized under the warrant.

On December 3, 1973, following petition and hearing, the district court of Park County revoked the deferred imposition of sentence on the 1972 charge, and sentenced Thorsness to four years in the state prison. That judgment and sentence is also appealed here.

- 2 -

In his petition for writ of supervisory control, Thorsness alleged the search which produced the drugs was conducted under an improper warrant. He contends that insufficient probable cause was demonstrated to the magistrate to support the issuance of a search warrant.

Where, as here, there is no evidence of probable cause other than that contained in the affidavit, we are confined to that document alone for a finding of probable cause. Petition of Gray, 155 Mont. 510, 473 P.2d 532.

In this case the establishment of probable cause sufficient to authorize the issuance of a search warrant, turns on the statement in the affidavit that a "source of known reliability" told police that Thorsness would be traveling through Missoula with cocaine and other drugs in his possession on August 1, 1973. The quantum of information necessary to permit the use of such hearsay in establishing probable cause was set forth in Aguilar v. Texas, 378 U.S. 108, 83 S.Ct. 1509, 12 L ed 2d 723, 729:

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 4 L ed 2d 697, 80 S.Ct. 725, 78 ALR2d 233, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, [citing case], was 'credible' or his information 'reliable'. * * *"  [Emphasis supplied]

The affidavit here contains no underlying circumstances upon which the informant based his conclusion that Thorsness would be traveling through Missoula with cocaine or other drugs in his possession on August 1. The affidavit contains no statement as to how the informant received his information. It cannot be determined if the informant came by his information directly or whether he merely relied upon rumor or reputation.

- 3 -

The deficiency here is similar to that found in Spinelli v. U.S., 393 U.S. 410, 416, 89 S.Ct. 584, 21 L ed 2d 637, where the Court said:

> " * * * The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information--it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. Cf. Jaben v. United States, 381 U.S. 214 (1965). In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

Accordingly, the writ of supervisory control should issue, and the evidence seized should be suppressed in any future prosecution for possession of those drugs.

We now determine whether such evidence was properly considered in revoking the deferred imposition of sentence. Thorsness urges, in substance, that illegally seized evidence cannot be used in any criminal proceeding affecting a man's liberty.

Section 95-2206, R.C.M. 1947, grants the court the discretionary power to defer imposition of sentence. State ex rel. Woodbury v. District Court, 159 Mont. 128, 495 P.2d 1119. In the absence of an abuse of discretion, the statute expressly permits revocation of that deferral. Since no abuse of discretion is alleged, we must determine whether the evidence which moved that discretion was properly before the court.

There is no doubt, on the basis of this record, that Thorsness' revocation was predicated on his possession of dangerous drugs, not on his violation of travel restrictions. The question thus is whether the exclusionary rule mandated by Mapp

v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L ed 2d 1081, applies to hearings on revocations of deferred impositions of sentences.

Analysis of this question requires that the reason for the exclusionary rule be kept in mind. The United States Supreme Court in Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L ed 2d 1669, said:

" * * * The rule is calculated to prevent, not to repair. Its purpose is to deter--to compel respect for the constitutional guaranty in the only effectively available way--by removing the incentive to disregard it."

Applied to the particular facts of the instant case, the question must be: Would the exclusion of the illegally seized drugs at Thorsness' revocation hearing deter the state from similar illegal seizures in the future? Not at all.

The illegality of this seizure was that it was conducted under a defective warrant. The error was not of an "officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436, 440. Rather, the fatal error was that of the issuing judicial officer. Since we have already ruled that the evidence is inadmissible in a prosecution for its possession, we find little additional deterrent value in denying its inadmissibility in the revocation hearing.

The U. S. Supreme Court recently in United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L ed 2d 561, 571, held:

"Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally-seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served."

That Court has recognized a number of areas where the remedy is too ineffective to warrant its application. Standing to invoke

the rule has been limited to cases in which the government seeks to use the illegally seized evidence against the victim of the unlawful search. Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L ed 2d 208. The rule does not apply to exclude use of such evidence to discredit a defendant's voluntary testimony. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503. Illegally seized evidence may also be used in grand jury proceedings. United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L ed 2d 561.

Since the rule is really a remedy, the universal application of which is not dictated by the court which created it, we find it inapplicable here. Here, it was the issuing magistrate who erred. There is no evidence that use at the revocation hearings was the intended use at the time of the issuance of the warrant. As we have already ruled, the evidence is not admissible in a prosecution for its possession. There would be only minimal deterrent effect in denying its use at the revocation hearing. There would, however, be a substantial interference with Montana's probation process were we to impose this limitation upon it.

This view has ample support in other jurisdictions. See, e.g. United States v. Hill, 447 F.2d 817 (7th Cir. 1971); United States v. Allen, 349 F.Supp. 749 (N.D. Calif. 1972); People v. Atencio, (Colo. 1974), 525 P.2d 461; People v. Dowery, 20 Ill.App.3d 738, 312 N.E.2d 682.

Accordingly, the revocation of Thorsness' deferred sentence is affirmed; the order of the district court denying the motion to suppress is reversed.

_____
Justice

We concur:

---------------------------------
   Chief Justice

---------------------------------

---------------------------------

---------------------------------
   Justices


Mr. Justice Wesley Castles did not participate in these hearings.