No. 13050

IN THE SUPREME COURT OF THE  STATE OF MONTANA

1975

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DOUGLAS C. THOMSON,

Defendant and Appellant.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Murphy, Robinson, Heckathorn and Phillips and
Douglas D. Dasinger, Kalispell, Montana
Douglas D. Dasinger argued, Kalispell, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General,
argued, Helena, Montana
Jack Yardley, County Attorney, argued, Livingston,
Montana
David DePuy, Deputy County Attorney, appeared,
Livingston, Montana

---

Submitted: December 8, 1975

Decided: JAN 2 0 1976

Filed: JAN 2 0 1976

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment of conviction entered on a jury verdict of guilty. Defendant Douglas C. Thomson was convicted on two counts, possession and sale of dangerous drugs in Park County, the Honorable Robert H. Wilson, presiding.

Prior to trial, defendant moved to suppress any evidence obtained as a result of a search warrant. The motion, after hearing, was denied. The appeal is based on the denial of the motion to suppress, and on two jury selection procedural matters.

One Paul Hallett was a prisoner in the Livingston city jail, having been arrested on a fraudulent check charge. On the evening of November 16, 1974, Hallett asked to see an officer and asked if the officer would like certain information relating to drug sales by defendant. Hallett was later interviewed by the county attorney.

On the basis of the information received the county attorney prepared an application for a search warrant. In the early morning hours of November 17, 1974, the application was presented to District Judge Jack D. Shanstrom in his home. Two police officers, the county attorney, and Hallett met with Judge Shanstrom. After examining the application, Judge Shanstrom placed Officer Warren and the informant Hallett under oath and examined each of them for about twenty minutes. The examination included discussions of Hallett's information about defendant and one Adams, who was/then under a deferred imposition of sentence from Billings for drugs. The Judge was familiar with both defendant and Adams and examined the informer Hallett extensively in detail on his knowledge of both subjects, the drugs, and the location of the drugs. Based on the application and on his independent examination of the informant Hallett as to both his own involvement and his knowledge, Judge Shanstrom issued the search warrant.

- 2 -

Prior to trial at a hearing on the motion to suppress Judge Robert H. Wilson presided. Judge Shanstrom testified and was cross-examined. Judge Wilson denied the motion to suppress. Judge Wilson tried the case with a jury.

Defendant's basic issue on appeal is whether the search warrant was issued on probable cause.

Defendant approaches his argument--that there was not probable cause shown--in a sort of two pronged manner. First, he suggests that because Judge Shanstrom questioned the informant about features within the Judge's own knowledge, such as Adam's prior conviction and defendant's reputation, that he was not a "detached magistrate". We need not dwell long on this. It is clear from Judge Shanstrom's testimony that he was examining the informant to determine the reliability of his information. The informant was, in a sense, an itinerant unknown who was being held in jail on another charge, but he was a named person.

Judge Shanstrom was the neutral member of the judicial branch of government whose duty it is to determine whether there was probable cause for the issuance of a search warrant. The probable cause for the issuance of a warrant was stated in the application but the source of that information was a named informant whose reliability had not been previously tested. Judge Shanstrom's examination of that informant on information known to the Judge made a reasonably reliable test of that information necessary to support reliability and thus probable cause. Defendant cites United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L ed 2d 752, and Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L ed 2d 564, for the proposition that a "neutral and detached" magistrate is required. Neither case is applicable here. Both cases involved attorneys general, one without judicial approval; the other the attorney general acting as a justice of peace issuing his own search warrant, in effect.

- 3 -

The second prong of the defendant's attack is that the informant's reliability was not established because he was unknown as to reliability. That is why Judge Shanstrom examined the informant--an independent means of establishing reliability. But, defendant argues that the application must in and of itself establish both (a) the reliability of the informant and (b) the underlying circumstance giving rise to the probable cause.

In State ex rel. Glantz, 154 Mont. 132, 137, 461 P.2d 193, this Court said:

> "* * * whenever an informer's statements are relied upon as probable cause, there must be a demonstration of the reliability or credibility of the informer."

See: State v. Paschke, 165 Mont. 231, 527 P.2d 569, 31 St.Rep. 847; State v. Thorsness, 165 Mont. 321, 528 P.2d 692, 31 St.Rep. 895.

Ordinarily, the reliability of the informer has been shown by the informer's reputation as an upstanding citizen or by past performance; and in either event these facts can be stated in the application. But here, as previously set out, these facts did not exist so the issuing magistrate tested that reliability in a manner, under oath, designed to independently satisfy the magistrate of the accuracy of the information. We hold this to satisfy the showing of probable cause necessary for the issuance of the warrant.

On oral argument, counsel cited State ex rel. Townsend v. District Court, _____ Mont._____, _____P.2d _____, 32 St.Rep. 1163, for the proposition that the affidavit for search warrant cannot be supplemented by oral statements to the magistrate. That is correct and here we point out that the affidavit was wholly sufficient to establish probable cause, but being based on hearsay from an informant, the reliability of that informant may be checked by the magistrate. It is no doubt desirable to have a written record of that examination, but the exigencies of the nighttime situa-

tion did not permit such. The Judge testified and was subject to cross-examination. His only concern was as to the reliability of the hearsay, and he so testified. Thus, here oral testimony is not supplementing probable cause---it is merely providing a direct test of reliability by a conscientious magistrate. The cases on unnamed informants are not in point.

The two procedural matters in jury selection complained of arose in this manner:

Prior to the exercise of peremptory challenges, outside the presence of the jury, counsel for defendant challenged for cause the seating of a prospective juror, J. E. Gaab, on the grounds that he was an employee of the State Fish and Game Department and had been in law enforcement work. The challenge was denied. Mr. Gaab did not sit as a trial juror, but defendant claims error because he was obligated to use a peremptory challenge.

In defendant's brief on appeal it is stated that "Prospective juror, J. E. Gaab, admittedly was a law enforcement officer". In point of fact juror Gaab was an officer of the Montana Fish and Game department.

Section 95-1909(d)(1), R.C.M. 1947, states that "Each party may challenge jurors for cause, and each challenge must be tried by the court". Subsection (2) lists those reasons for which a challenge for cause may be taken. That subsection also provides that a challenge for cause may be taken "for any other reason which the court determines". Of the reasons listed in section 95-1909 only the final one would provide a reason for challenging a law enforcement officer for cause. Section 95-1909(d)(2)(x) states:

> "For the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party."

That section does not specifically exclude law enforcement officers from serving as jurors in a criminal case. Not being specifically provided for, law enforcement officers must stand on an equal footing with any other citizen as a prospective juror. Since defendant does not allege the existence of any particular state of mind which would place him within the strictures of subsection (x), other than the fact that he is a fish and game officer, no basis exists for his disqualification for cause. The bare fact that he is connected with law enforcement does not, without more, necessitate a finding that he would not be an impartial juror.

In State v. Allison, 122 Mont. 120, 129, 131, 199 P.2d 279, the Court stated:

> "It is a difficult matter at best to ascertain the real state of mind of a prospective juror with respect to detecting the existence of bias or prejudice against one accused of crime. For that reason this court has said (State v. Russell, 73 Mont. 240, 249, 235 Pac. 712, 715) that the determination of the qualification of a juror to serve in a case before the court 'must be left largely to the sound discretion of the trial court.' Again in State v. Huffman, 89 Mont. 194, 296 Pac. 789, 790, this court said: '* * * the trial court is the judge of the weight to be given to the testimony adduced on a voir dire examination.'"

Assumedly, the district court could have removed juror Gaab for cause even without a clear showing of impartiality if the court had any doubt as to the juror's state of mind. Such a determination is within the sound judicial discretion of the court. Where the court does not exercise its discretion in removing a juror for cause when a challenge is made, this Court may reverse a conviction only where there is demonstrated a clear abuse of discretion. In the instant case no such abuse of discretion can be shown by defendant.

While a fish and game warden is a law enforcement officer in a narrow sense, the authority of those officers is limited in scope by Chapter 1, Title 26, Revised Codes of Montana. Section 26-110(2),

R.C.M. 1947, substantially states the law enforcement duties of wardens:

> "They shall enforce the laws of this state and the rules of the commission with reference to the protection, preservation, and propagation of game and fur-bearing animals, fish and game birds."

The instant case deals with a violation of the general criminal law of the state of Montana, specifically the Montana Dangerous Drug Act. Prospective juror Gaab, as a game warden, has no connection with offenses committed in violation of the drug laws of this state. He has no power as a law enforcement officer in that respect and he stands as a private citizen. Without a showing of impartiality there can be no abuse in discretion by the trial court in refusing to allow that juror to be removed for cause.

In State v. Cadotte, 17 Mont. 315, 316 (1895), this Court found no error in refusing to remove a juror for cause where the juror was a brother-in-law of the county attorney who was prosecuting. There the Court said:

> "Furthermore, the examination of this juror upon his _voir dire_ does not at all tend to show any bias, either implied or actual."

It is clear then that, unless the juror falls within one of the categories of section 95-1909, he will not be removed for cause without a showing of impartiality. In this case there is not only no showing of impartiality, there is not even an allegation of impartiality. The bare fact of Gaab's position as a game warden is not enough to create a doubt as to his impartiality, without more.

The district court record indicates that Gaab was removed as a juror through a peremptory challenge by defendant. In _Allison_ the Court recognized that even if a doubt did exist as to the juror's state of mind, the fact that the defendant later removed the juror through the exercise of a peremptory challenge

precludes the possibility of any prejudice to the defendant. In distinguishing State v. Sims, 51 N.M. 467, 188 P.2d 177, the Court stated:

> "* * * In the case at bar, however, the defendant had three peremptory challenges left at the time the court overruled the challenge against the witness Leemhius and immediately following defendant's taking of exception to the court's overruling said challenge, the defendant exercised his sixth peremptory challenge to remove said juror. In the case at bar the court did not, as in the Sims case, force the objectionable juror upon the defendant after the latter had exhausted all his peremptory challenges, and so far as prejudice to the rights of the defendant is concerned, Leemhius did not sit on the jury which tried the defendant. The fact that defendant regarded jurors Jensen and Ronnin as undesirable gave him no right to have Leemhius excused for bias in order that defendant might get rid of one or two other jurors, no showing having been made that those prospective jurors were not qualified."

Defendant was not entitled to the removal of Gaab as a juror for cause, and even if he had been so entitled he was in no way harmed in his defense since Gaab did not sit on the jury.

Next and last, defendant claims error in the answers on voir dire examination of jurors when juror Richard Cain was alleged to have answered in the negative a question as to whether any potential juror was a member of a law enforcement agency or connected with a law enforcement agency. Defendant then alleges that Mr. Cain was a member of the Police Commission of the city of Livingston. These allegations by defendant do not appear in the record. They come by way of counsel's affidavit. The state presented a counter-affidavit from juror Cain denying that such questions were even asked. Aside from the fact that a police commissioner under Montana law, Chapter 18, Title 11, Revised Codes of Montana, 1947, is not a law enforcement officer and thus the answer would have been technically proper in any event, we do not accept affidavits to supplement an appellate record in this manner.

- 8 -

State ex rel. Woodahl v. District Court, _____ Mont. _____,
540 P.2d 312, 32 St.Rep. 906.

Finding no error, the judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 9 -